820

## McNEILL v. DANIEL.

Per Curiam. The occupancy by the grantee in a deed of land upon which there is timber, though such occupancy be open, notorious, and in good faith, and though the occupancy has been continuous for such length of time as required by law to give the grantee a good prescriptive title to the land, does not conclude a prior lessee of the timber upon the land under a lease executed by the predecessor in title of the grantee and duly recorded. Such occupancy by the grantee in the deed is consistent with, and is not as matter of law adverse to, the possession of the prior lessee. That being true, no title by prescription would arise against the lessee; and the court erred in ruling upon the admission of evidence, and in charging principles of law contrary to what is said above. Civil Code (1910), § 4164; *Moore* v. *Ensign-Oscamp Co.*, 131 *Ga.* 421 (62 S. E. 229).

*Judgment reversed. All the Justices concur, except Hill, J., who dissents, and Hines, J., absent for providential cause.*

No. 8589.   May 13, 1932.

*Hitch, Denmark & Lovett,* for plaintiff in error.
*Fleming & Fleming,* contra.

HILL, J. I dissent from the ruling of the majority of the court in this case reversing the judgment of the trial court. The evidence authorized, if it did not demand, the finding of the jury in favor of the plaintiff. I can not agree to the proposition that where one buys a tract of land, paying therefor $27,500, and goes into possession of the same in good faith under a bond for title and deed, and remains in possession thereof for thirteen years and holds such possession adversely to the world for that length of time, without any other claimant asserting any right to the land or the timber on the same, or any portion thereof, within the thirteen-year period, such purchaser can lose his timber rights on the land in controversy, even though the defendant had an older recorded deed to certain timber on the land, but who has not asserted any right thereto against the plaintiff for thirteen years. In such circumstances the plaintiff in this case would acquire a title to the land, including the timber thereon, by prescription by reason of seven years adverse possession, where that possession was acquired in good faith, for value, and without any fraud. The writer of this dissent sets out the facts

(supra), in order that the view here presented may be better understood. Neither charge of the court and refusal to charge, nor rulings on the admissibility of evidence show error, and it was not error to refuse a new trial. The court correctly charged the jury that "If Mrs. Daniel's title and possession began in good faith, some one else claiming title would not prevent her title from becoming complete by prescription, if no steps had been taken in seven years to test it. In other words, if she had no notice at the time she went in possession of the property of the existence of this other deed, or other deeds, or, even if she had notice of it, if she had been in possession of the property for seven years, openly, notoriously, and peaceably and in good faith, and with notice to the world, and nobody tested her title during that time, then she would have a good title."

In the brief for the plaintiff in error it is stated that "It is conceded that the bond for title above-mentioned described the lower Emanuel farm without any reference whatever to the timber thereon; and therefore the controlling issues in this case were (a) whether or not the plaintiff had been in public, continuous, exclusive, uninterrupted, and peaceable possession of the timber in controversy for a period of seven years or more: (b) whether or not her possession of said timber, if any, originated in fraud; and (c) whether or not such possession as she may have had to said timber was adverse to the Savannah River Lumber Co., the holder of the legal title thereto." In *Baxter* v. *Phillips*, 150 *Ga.* 498 (104 S. E. 196), it was held: "In this State a bond for title is color of title, and the holder thereof may, through seven years adverse possession, acquire title against all persons, except his obligor, and the heirs, executors, and administrators of the latter." In the opinion (quoting from *Garrett* v. *Adrain*, 44 *Ga.* 274) it was said: "The very object of the law allowing title by prescription is to protect a defective title against a perfect paper one, after seven years peaceable possession. If the one who makes the bond is a mere squatter, a tenant, or is under a forged title, or as trustee, and the purchaser buys in good faith and goes into possession, thinking his title good, he is in adversely. If this were not so, the title by prescription could never arise at all; since, if the person prescribing must have bought from one having the right to sell, he gets a good title without the prescription.

The only limitation put by the law on his right is, that he shall hold, under a written claim of right, in good faith, without fraud on his part. To say that it is his duty to inquire is in effect to repeal the statute; since, if he is to be held to all the knowledge that he would learn upon proper inquiry, is to insist that he must not buy, unless the vendor has a good title. We have held at this term, that though there was a prior deed from the vendor on record, yet a purchaser who buys in good faith, and gets a paper claim of right, acquires in seven years a prescriptive title. As we have said, nothing but fraud, want of good faith, will vitiate his claim of right. This the law will not presume. This can not be founded on presumptive notice, on that sort of notice which is based upon record, or which is presumed from want of diligence."

The evidence in this case tends to show that the plaintiff, Mrs. Daniel, went into possession of the property in controversy in 1915, and that she entered possession in good faith, and so remained for a period of about thirteen years. The evidence also tended to show that she was a bona fide purchaser for full value of the property in controversy, and that there was no reservation of any timber rights in any bond for titles or deeds under which she held title to the realty; that she paid the sum of $27,500 for the realty, including all the timber thereon as a part of the realty; that the value of the timber on the land purchased by the plaintiff was one of the considerations that moved her to buy at the price named; and, as stated, she was in actual possession and control of the property, on which the defendant was cutting timber, since November 16, 1915. The evidence tended to show that near the house was a field enclosed with a wire fence; there was also on the place a tenant-house that had been occupied continuously since plaintiff's purchase of it; a part of the land had been cultivated; and some of the pine timber had been boxed for turpentine. The evidence tended to show also that from the time of the plaintiff's purchase in November, 1915, to March, 1929, when she learned that the defendant was cutting timber on the land (a period of more than thirteen years), she had no knowledge or intimation that any one claimed title to the timber in controversy. It is true that a witness for the defendant claimed that he walked over the land in controversy once a year and sometimes oftener,

in order to see after the timber; but this witness admitted that he never told the plaintiff, Mrs. Daniel, anything about the timber being claimed by any one else. It was further in evidence that the tenants of Mrs. Daniel cut firewood on the swamp lands where the timber in controversy was located. Mr. Daniel, the husband of the plaintiff, testified that he would go on the land and ride around and see about the fence, and that he knew what was going on, and that the timber was not being cut. "We went there in January, 1916, and planted oats there that fall. I have planted oats there successively nine years across the railroad from that house on the 113-acre tract. The field in which we planted oats was not enclosed in the fence. As to whether that field is in the swamp, it is, the second bottom, it is considered a swamp. We had to cut down some of the trees; it was an old field in the swamp." From the foregoing, and other evidence in the record, the jury was authorized to find a verdict for the plaintiff, and for damages against the defendant for cutting the timber sued for. The court did not err in refusing a new trial.